1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11   VANKIET TRAN, an individual,              Case No.:  23cv2057-GPC(BLM)

12                              Plaintiff,     **ORDER GRANTING DEFENDANT'S**
                                               **MOTION TO DISQUALIFY**
13   v.                                        **DOWNTOWN LA LAW GROUP AS**
                                               **PLAINTIFF'S COUNSEL**
14   COSTCO WHOLESALE
     CORPORATION, a Washington
15   Corporation; TIM DOES, an individual      **[Dkt. No. 4.]**
     and DOES 1 to 50, inclusive,
16
                                Defendants.
17

18

19         Before the Court is Defendant's motion to disqualify Plaintiff's counsel,

20   Downtown LA Law Group.  (Dkt. No. 4.)  Plaintiff filed an opposition.  (Dkt. No. 6.)

21   Defendant filed a reply.  (Dkt. No. 7.)  The Court finds that the matter is appropriate for

22   decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).  Based on the

23   reasoning below, the Court GRANTS Defendant's motion to disqualify Downtown LA

24   Law Group as Plaintiff's counsel.

25                              **Factual Background**

26         On April 4, 2023, Plaintiff Vankiet Tran ("Plaintiff") filed a complaint against

27   Defendant Costco Wholesale Corporation ("Defendant" or "Costco") in San Diego

28   County Superior Court alleging causes of action for negligence and premises liability for

                                         1

a slip-and-fall incident at Costco's 2345 Fenton Parkway store, in San Diego, CA on April 21, 2021.  (Dkt. No. 1, Not. of Removal, Ex. A, Compl. ¶¶ 5, 8.)  The case was removed to this Court on November 7, 2023.  (*Id.*)

Plaintiff is represented by Andrew Murray Morrow, III and Daniel Azizi of Downtown L.A. Law Group ("DTLA Law").  Anthony Werbin ("Werbin") is currently an attorney at DTLA Law but is not counsel of record in this case.  Prior to joining DTLA Law, Werbin was an associate at Manning & Kass, Ellrod, Ramirez, Trester LLP ("Manning") where he was counsel for Costco on 21 cases from July 5, 2017 to January 16, 2020.  (Dkt. No. 4-2, Ruijters Decl. ¶ 9.)  Werbin billed 1,195 hours of time between 2017 and 2020 working on Costco matters.  (*Id.* ¶ 15.)  He represented Costco in matters relating to personal injuries, including trip-and-fall, and slip-and-fall injuries.  (*Id.* ¶ 10.)  In one case, Werbin served as one of Costco's trial counsel in a personal injury matter captioned, *Guo Jun Chen v. Costco Wholesale Corp.* (Los Angeles County Superior Court, Case No. BC654699), which went to trial on May 29, 2019, with a verdict rendered on June 4, 2019.  (*Id.* ¶ 11.)

While representing Costco, Werbin was lead counsel and "handled virtually every aspect of Costco's file, which included, but was [ ] not limited to, developing strategy, communicating with Costco employees as well as its claims administrator Gallagher Bassett, reviewing confidential and privileged documents, preparing responses to discovery, preparing witnesses to testify at depositions, defending numerous depositions of Costco employees, and developing litigation strategy.  (*Id.* ¶ 12.)  When working for Costco, "Werbin was privy to Costco's pre-litigation strategies, case handling procedures, attorney-client communications, confidential and proprietary information about Costco's operations, confidential client documentation, policies and procedures, and trade secrets."  (*Id.* ¶ 13.)  Further, on March 19, 2019, Werbin attended a one-day California Defense Counsel Conference that Costco held for its panel of California defense attorneys to discuss California litigation, provide information, and share defense tools and strategies with its defense counsel.  (*Id.* ¶ 14.)  Werbin was an active participant

and even sent an email to other attendees sharing his thoughts on the defense strategy after the conference.  (*Id.*)

In response, Werbin declares that he has been an attorney at DTLA since February 2020 and has never worked at Tharpe & Howell, LLP.[1]  (Dkt. No. 6-2, Werbin Decl. ¶¶ 2, 3.)  Previously, he was an associate at Manning from July 2017 to January 2020.  (*Id.* ¶ 3.)  During the two and a half years at Manning, he worked on hundreds of insurance defense cases and about 20 cases included Costco as a defendant.  (*Id.* ¶¶ 4-5.)  He asserts he did not receive any specific guidance, nor was there any concerted effort to handling, negotiating, and/or settling Costco claims from Manning.  (*Id.* ¶¶ 6-7.)  All decisions were left to the attorney's own discretion.  (*Id.* ¶ 8.)

Further, Werbin attests that he never received confidential or proprietary information from Costco during his representation.  (*Id.* ¶ 9.)  Werbin avers that any information that he may have regarding the defense of personal injury/premises liability claims comes from his own personal knowledge and experience gained during his eight years as a licensed attorney, not from handling claims for Costco.  (*Id.* ¶ 10.)

Werbin acknowledges that in early 2020, after he left Manning, he filed a case against Costco, the *Staats* case, to a successful resolution.  (*Id.* ¶ 11.)  In the *Staats* case, Werbin worked directly with Jill Leathers, Costco's claims adjuster, whom he had worked with while at Manning.  (*Id.* ¶ 12.)  Even though Costco knew about the adverse successive representation in the *Staats* case, it did raise any formal objections.  (*Id.* ¶ 13.)

Werbin asserts he has not represented Costco in this case, has never worked on any cases involving Costco at 2345 Fenton Parkway, and has not represented Costco in over four years.  (*Id*. ¶¶ 15-19.)  Since being employed with DTLA, he has not consulted with, instructed or advised any other attorney or staff member of DTLA concerning any

---

[1] Despite his declaration signed under penalty of perjury, the Court notes that Anthony Werbin's Linkedin.com page states he was an attorney at Tharpe & Howell LLP from September 2012 to February 2014.  https://www.linkedin.com/in/anthony-werbin-95a67440?original_referer=https%3A%2F%2Fwww.google.com%2F last accessed Mar. 22, 2024.

aspects of a Costco case.  (*Id.* ¶ 20.)  According to Werbin, DTLA attorneys are divided into teams of attorneys, paralegals and office staff and the teams do not share team members, workloads, or case files.  (*Id.* ¶ 21.)  Werbin's team is not assigned any Costco cases.  (*Id.* ¶¶ 22, 23.)

According to DTLA Law's Human Resources Manager and Administrator Director, since the start of Werbin's employment at DTLA, it was the policy to not assign Werbin any Costco cases.  (Dkt. 6-3, Rezkallah Decl. ¶ 3.)  While no date is provided, Rezkallah attests that there were procedures to create a "wall" to ensure there was no sharing of confidential information and include "1) departmental separations of attorneys and geographical locations of case materials; 2) established rules and procedures preventing access to confidential information and files; 3) enacted prohibitions against and sanctions for discussing confidential matters including, but not limited to immediate dismissal; 4) enacted procedures to prevent Mr. Werbin from sharing in the profits from the representation, i.e. Mr. Werbin does not derive any income or bonuses from profits made by DTLA on COSTCO cases; and 5) required continuing education in professional responsibility commensurate with the State Bar schedule."  (*Id.*)

When DTLA Law hired Werbin, it initially maintained its files in a way to prevent Werbin from accessing Costco's electronic files but later it password protected and separately maintained the electronic files in response to suggestions in a court order.  (*Id.* ¶ 4.)  Then, in mid-2021, in granting DTLA Law's disqualification, another state court order made specific observations and recommended that DTLA Law implement a firewall so that only attorneys assigned a matter can view the file.  (*Id.* ¶ 5.)  Therefore, in December 2021, DTLA Law implemented FileVine, a new firewall system, which prevents employees from viewing case files, or accessing documents relating to a matter, if they are not assigned to the case.  (*Id.* ¶¶ 6-8.)  Prior to using FileVine, it was DTLA Law's understanding that its prior software AbacusLaw shielded Costco files from Werbin, but upon using FileVine, recognizes it provides superior shield protection.  (*Id.* ¶

6.)  Because Werbin is not assigned to any Costco cases, he cannot view any Costco case files or access any documents.  (*Id.* ¶ 9.)

**Discussion**

**A.    Legal Standard on Motion to Disqualify**

In determining whether to disqualify counsel, the Court applies California law.  *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) ("Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue.").  District courts have discretion to disqualify counsel.  *See Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980); *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1143-44 (1999) ("Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion.").  "A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'"  *SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th at 1145 (quoting Cal. Civ. Code § 128(a)(5)).

Motions to disqualify counsel ultimately "involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility."  *Id.*  In considering a disqualification motion, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar."  *Id.*  Therefore, "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process."  *Id.*

"[W]hile disqualification is a drastic measure and motions to disqualify are sometimes brought by litigants for improper tactical reasons, disqualification is not 'generally disfavored.'"  *M'Guinness v. Johnson*, 243 Cal. App. 4th 602, 608, 627 (2015) (rejecting district court cases stating disqualification is generally disfavored because, *inter alia*, the cases did not rely on California law).  "Indeed, when the circumstances of a

5

disqualifying conflict exist . . . disqualification is required." *Id.* at 608.  California courts recognize that a motion to disqualify may be misused by a party to delay or increase expense to an opponent, *SpeeDee Oil Change Sys., Inc.,* 20 Cal. 4th at 1145; therefore, in cases where there is a potential for tactical abuse, disqualification motions "should be subject[ ] to particularly strict judicial scrutiny." *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1349 (9th Cir. 1988) (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos*., 760 F.2d 1045, 1050 (9th Cir. 1985)).

**B.    Analysis**

Costco moves to vicariously disqualify DTLA Law from representing Plaintiff in this action because Werbin, an attorney at the firm, previously represented Costco while employed at another firm.  (Dkt. No. 4.)  Specifically, it argues that Werbin possesses confidential attorney-client information belonging to Costco that is substantially related to these proceedings and DTLA Law failed to implement a screening policy until December 2021.  (*Id.* at 9-15.)  DTLA Law responds that Werbin does not possess Costco's confidential information, and any knowledge he has about Costco's overall structure, business practices or litigation philosophy is merely "playbook" material and not a basis for disqualification.  (Dkt. No. 6.)  Further, DTLA Law claims it implemented an effective ethical wall, in December 2021, that prevents the need for the firm's disqualification.  (*Id.*)  In reply, Costco argues the late implementation of a software system is not enough and DTLA merely provides a declaration that parrots the elements of an ethical wall.  (Dkt. No. 7 at 6.)

Whether DTLA should be vicariously disqualified depends on whether Werbin would be disqualified from representing Plaintiff if he was involved in this case.  *See Sierra v. Costco Wholesale Corp*., 630 F. Supp. 3d 1199, 1205 (N.D. Cal. 2022)

**1.    Whether Werbin Would Be Disqualified**

"It is beyond dispute a court may disqualify an attorney from representing a client with interests adverse to those of a former client." *H.F. Ahmanson & Co. v. Salomon Bros., Inc.,* 229 Cal. App. 3d 1445, 1451 (1991).  In a case of successive representation,

[a] former client may seek to disqualify a former attorney from representing an adverse party by showing the former attorney actually possesses confidential information adverse to the former client. However, it is well settled actual possession of confidential information need not be proved in order to disqualify the former attorney. It is enough to show a 'substantial relationship' between the former and current representation.  If the former client can establish the existence of a substantial relationship between representations, the courts will conclusively presume the attorney possesses confidential information adverse to the former client.

*Id.* at 1452; *see also* California Rules of Professional Conduct 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent.") (effective Nov. 1, 2018).

"To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation."  *City & Cnty. of San Francisco v. Cobra Sols., Inc.,* 38 Cal. 4th 839, 847 (2006); *Flatt v. Superior Ct*., 9 Cal. 4th 275, 284 (1994) (a former client may disqualify an attorney by showing a "substantial relationship" between the subjects of the prior and current representations); *Khani v. Ford Motor Co*., 215 Cal. App. 4th 916, 920 (2013) ("A substantial relationship exists where 'the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation.'").

"If the former representation involved [ ] a direct relationship with the client, the former client need not prove that the attorney possesses actual confidential information." *City & Cnty. of San Francisco*, 38 Cal. 4th at 847.  "Instead, the attorney is presumed to possess confidential information if the subject of the prior representation put the attorney

in a position in which confidences material to the current representation would normally have been imparted to counsel." *Id.; see also Jessen v. Hartford Cas. Ins. Co*., 111 Cal. App. 4th 698, 709 (2003) ("If the relationship between the attorney and the former client is shown to have been direct—that is, where the lawyer was personally involved in providing legal advice and services to the former client—then it must be presumed that confidential information has passed to the attorney and there cannot be any delving into the specifics of the communications between the attorney and the former client in an effort to show that the attorney did or did not receive confidential information during the course of that relationship.").

A substantial relationship exists "when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement, or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Jessen*, 111 Cal. App. 4th at 713; *see H.F. Ahmanson*, 229 Cal. App. 3d. at 1455 (courts should "focus on the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases. As part of its review, the court should examine the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy.") (citation omitted).

However, "information such as the first client's overall structure and practices, litigation philosophy or key decision makers would not require disqualification unless it were found to be material." *Farris v. Fireman's Fund Ins. Co.,* 119 Cal. App. 4th 671, 680 (2004) (internal citations omitted); *Khani,* 215 Cal. App. 4th at 922 (absent "any showing of its materiality," an attorney's "exposure to playbook information" of a certain area of case law is insufficient to disqualify he or her in a specific case.). However, "[w]here an attorney acquires knowledge about the former client's 'attitudes,' practices, business customs, 'litigation philosophy,' strengths, weaknesses or strategy,

disqualification may be required for that reason alone." *Knight v. Ferguson*, 149 Cal. App. 4th 1207, 1215 (2007) (citing *Jessen*, 111 Cal. App. 4th at 712).

Here, while employed at *Manning*, it is not disputed that Werbin had a direct attorney-client relationship with Costco as he served as Costco's lead counsel in 21 cases, involving personal injury cases, including taking one case through a trial. The disputed question is whether there is a substantial relationship between the *subject* of Werbin's prior and current representation of Costco if he were counsel. *See City & Cnty. of San Francisco*, 38 Cal. 4th at 847; *Jessen*, 111 Cal. App. 4th at 712-13 (defining "subject" broader than the legal and factual issues in a case but also includes "information material to the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues.").

"The elements of a cause of action for premises liability are the same as those for negligence." *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013) (citing *Ortega v. Kmart Corp.,* 26 Cal. 4th 1200, 1205 (2001)). A plaintiff must prove, "a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *Beacon Residential Comm'y Ass'n. v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 573 (2014) (citation and internal quotation marks omitted).

In this negligence/premises liability case, similar to the ones Werbin had defended while at *Manning*, the legal issue of Costco's duty, whether Costco exercised reasonable care in keeping the premises reasonably safe, and the elements of causation and breach, whether Costco had actual or constructive knowledge of the dangerous condition, are the same. *See e.g., Satamian v. Costco Wholesale Corp*., Case No. 2:20-cv-05776-VAP-ASx, 2021 WL 4805311, at *4 (C.D. Cal. June 25, 2021) (granting Costco's summary judgment motion on slip and fall case). Moreover, Costco has shown that Werbin was privy to Costco's pre-litigation and litigation strategies on whether to settle or litigate these premises liability claims. *See Jessen*, 111 Cal. App. 4th at 712 ("Depending upon the nature of the attorney's relationship with the former client, in the office or in the

courtroom, the attorney may acquire confidential information about the client or the client's affairs which may not be directly related to the transaction or lawsuit at hand but which the attorney comes to know in providing the representation to the former client with respect to the previous lawsuit or transaction. For example, whether a lawsuit is settled or contested may depend upon a myriad of considerations about the client's affairs which might not be subject to discovery but which nonetheless determine the client's course of action, such as a decision to settle an action or a particular claim or issue because of the potential for unrelated adverse ramifications to the client were the case to go to trial. The same might be true about the client's internal operations or policies, such as one which favors the settlement of lawsuits filed in some locales but not others based upon the client's history or perceptions about the inclinations of juries (or the capabilities of the bench) in the particular venues.")  Finally, Werbin reviewed confidential and privileged documents as well as trade secrets when he represented Costco.  Therefore, Costco has shown that Werbin had a prior direct attorney-client relationship where he was exposed to confidential material that is substantially related to the current representation if he were counsel.

While DTLA Law simply focuses on the fact that Werbin never worked on a Costco case involving the Fenton Parkway location, the Court must look at all aspects of the "subject" of the prior and current representation.  *See Jessen*, 111 Cal. App. 4th at 712.  Further, even if Werbin was privy to only "playbook" information, this information warrants disqualification because it is material to the current case.  *See Farris*, 119 Cal. App. 4th at 680.

Therefore, the Court concludes, as other district courts have ruled, that Costco has met its burden showing that Werbin had a direct relationship with Costco and that the subject matter of the prior and current representation, if he were counsel, are substantially related.  *See Sierra v. Costco Wholesale Corp*., 630 F. Supp. 3d 1199, 1206 (N.D. Cal. 2022) ("Here, Werbin's prior representations and the current case involve slip-and-fall cases with similar constructive notice issues. This is not a tangential issue in the case, but

rather a central issue that may become dispositive. . . Werbin's learned knowledge of Costco's internal policies, procedures, and strategies relating to constructive notice issues creates a substantial risk his representation of Plaintiff in this action would involve confidential information he previously acquired from Costco."); *Noris-Barrera v. Costco Wholesale Corp.*, Case No. 23-cv-05245-SI, 2023 WL 9181481, at *4 (N.D. Cal. Dec. 7, 2023) (finding Werbin had direct relationship with Costco and that the legal issues in those cases are closely related to the legal issues in this case); *Reid v. Costco Wholesale Corp.*, Case No. 23cv0255-FWS-JDE, 2023 WL 3432168, at *4 (C.D. Cal. Apr. 20, 2023) (knowledge possessed by Werbin concerning Costco's strategies and tactics is confidential); *Ramos v. Costco Wholesale Corp.*, Case No. CV 22-3579-MWF (AFMx), 2022 WL 18278604, at *2 (C.D. Cal. Nov. 8, 2022) ("Because Werbin possesses confidential information regarding Costco, and because this action is substantially related to cases Werbin previously worked on for Costco, Werbin's continued representation of the Plaintiff threatens the fairness of these proceedings and undermines the integrity of the legal system and judicial process."); *Vaxmonsky v. Costco Wholesale Corp.*, Case No. 22cv0098-JVS-DFM, 2022 WL 20955638, at *4 (C.D. Cal. July 27, 2022) ("Since Werbin's knowledge of Costco's warehouse procedures, safety practices, and legal strategies would have a direct impact on the current litigation, that knowledge is confidential and protected under the California Rules of Professional Conduct."); *but see Rodriguez v. Costco Wholesale Corp.*, 21cv4239-RGK-RAO, 2021 WL 4815017, at *2 (C.D. Cal. Aug. 30, 2021) (denying motion to disqualify DTLA Law because Costco failed to establish the matter is substantially related to any previous matter).  Therefore, Werbin would be disqualified if he were counsel of record in this case.

## 2.    Whether DTLA Law Should be Vicariously Disqualified

Because the Court has concluded that Werbin would be disqualified from representing Plaintiff in this action, the question is whether Werbin's disqualification is imputed to DTLA Law.

23cv2057-GPC(BLM)

1    Although vicarious disqualification is the general rule and courts should presume

2    knowledge is imputed to all members of a tainted attorney's law firm, "in the proper

3    circumstances, the presumption [of vicarious disqualification] is a rebuttable one, which

4    can be refuted by evidence that ethical screening will effectively prevent the sharing of

5    confidences in a particular case." *Kirk v. First Am. Title Ins. Co*., 183 Cal. App. 4th 776,

6    801, 801-10 (2010) (discussing history of the law of vicarious disqualification and

7    recognizing case law is mixed on whether vicarious disqualification of the entire firm is

8    automatic).  While the application of the rebuttable presumption is not entirely clear*, see,*

9    *e.g., Mattel, Inc. v. MGA Entm't, Inc*., 408 Fed. Appx. 45, 47 (9th Cir. 2011) ("Given the

10   uncertainty as to the status of California law" on vicarious disqualification after *Kirk,*

11   "the district court wouldn't have been clearly erroneous, whichever course it adopted on

12   the disqualification motion"), in this case, the parties apply the rebuttable presumption in

13   their analysis.

14    In such an analysis, the challenged law firm has the burden to establish "that the

15   practical effect of formal screening has been achieved." *Kirk*, 183 Cal. App. 4th at 810.

16   Two elements are necessary for an effective screen.  First, "the screen must be timely

17   imposed; a firm must impose screening measures when the conflict first arises." *Id.*  In

18   other words, "screening should be implemented before undertaking the challenged

19   representation or hiring the tainted individual." *Id.* at 810 n. 31.  Further, a firm should

20   not wait "until the trial court imposes screening measures as part of its order on the

21   disqualification motion." *Id.* at 810.

22    Here, DTLA Law acknowledges that an effective screen was not timely imposed,

23   either before hiring Werbin in February 2020, or undertaking challenged representations

24   against Costco after February 2020, as the new software, FileVine, was not implemented

25   until December 2021. *See Noris-Barrera*, 2023 WL 9181481, at *5 (because DTLA Law

26   took almost two years to take action to screen off Werbin, in December 2021, DTLA

27   should be disqualified).  DTLA Law effectively concedes the first element that the screen

28   was not timely imposed.  Therefore, it has failed to meet its burden on the first element.

Second, the firm must show that it has implemented "*preventative measures*" that guarantee that information will not be conveyed and the firm's burden is not met simply by producing "declarations stating that confidential information was not conveyed or that the disqualified attorney did not work on the case." *Kirk*, 183 Cal. App. 4th at 810 (emphasis in original). "The typical elements of an ethical wall are: [1] physical, geographic, and departmental separation of attorneys; [2] prohibitions against and sanctions for discussing confidential matters; [3] established rules and procedures preventing access to confidential information and files; [4] procedures preventing a disqualified attorney from sharing in the profits from the representation; and [5] continuing education in professional responsibility." *Id.* at 810-11 (quoting *Henriksen v. Great Am. Savings & Loan*, 11 Cal. App. 109, 116 n. 6 (1992)). The court must consider on a "case-by-case inquiry" . . . "whether the court is satisfied that the tainted attorney *has not had and will not have any improper communication* with others at the firm concerning the litigation." *Kirk*, 183 Cal. App. 4th at 811 (emphasis added).

On this second element, DTLA Law simply provides a declaration by the Human Resources Manager and Administrative Director, and the attorney of record, Mr. Morrow, stating the firm has implemented the *Kirk* elements of an ethical wall without providing specific details such as dates when the different measures to establish the ethical wall were implemented and fails to provide specific policies and procedures or other supporting documentation. (Dkt. No. 6-3, Rezkallah Decl. ¶ 3; Dkt. No. 6-1, Morrow Decl. ¶ 8.)

One court of appeal explained that the target firm should "at the very least, provide declarations from each member of its team working on the former client's matter, plus those attorneys (usually on the professional responsibility unit of a large firm) who learned of the facts that prompted the erection of the ethical screen in the first place." *Fluidmaster, Inc. v. Fireman's Fund Ins. Co*., 25 Cal. App. 5th 545, 552 (2018). Relying on *Kirk,* the court of appeal explained that the "target law firm needs to provide declarations sufficient to exclude any possibility of shared confidences—the declaration

of the disqualified attorney is not sufficient."  *Id.* at 552; *see also State Compensation Ins. Fund v. Drobot*, SACV 13-956 AG (CWx), 2014 WL 12579808, at *8 (C.D. Cal. July 11, 2014) (firm presented more than just declaration and included deposition transcript and declaration regarding billing entries to show there was no discussion of work with the tainted attorney); *Reid v. Costco Wholesale Corp*., Case No.: 8:23-cv-00255-FWS-JDE, 2023 WL 3432168, at *5 (C.D. Cal. Apr. 20, 2023) (concluding DTLA Law has not carried it burden to produce "evidence that ethical screening will effectively prevent the sharing of confidences in [this] particular case," with just declarations).

DTLA Law has failed to bear its burden to show that no confidential information was exchanged between Werbin and other DTLA Law attorneys regarding Costco trip-and-fall cases prior to December 2021.  *See Signature MD, Inc. v. MDVIP, Inc*., Case No. CV 14–5453–DMG (SSx), 2015 WL 12781603, at *3 (C.D. Cal. Jan. 20, 2015) (screen was implemented two days after the targeted firm was retained and although a two-day period is very short, the plaintiff provided no evidence that preventive measures were in place that ensured that no information was disclosed during that time); *Kirk,* 183 Cal. App. 4th at 816 n. 38 ("Clearly, every Sonnenschein attorney who worked on the related class actions, as well as any other member of the Sonnenschein firm whom Cohen is claimed to have had reason or occasion to discuss information obtained from plaintiffs' counsel, should provide testimonial evidence.") (citing *SpeeDee Oil*, 20 Cal. 4th at 1152 n.5).

Considering that DTLA Law has been disqualified on a number of Costco cases arising from Werbin's prior representation of Costco, it is surprising that DTLA Law, by presenting the almost identical Werbin and Human Resources Manager and Director declarations, has not attempted to cure the deficiencies noted by other courts by providing additional evidence to show that no confidential communication was exchanged between Werbin and other members of the firm prior to December 2021.  The omission of such evidence is telling.  Therefore, DTLA Law has failed to satisfy the second element by providing sufficient evidence that it implemented preventative measures to satisfy the

Court that no confidential information regarding Costco cases was exchanged between Werbin and other DTLA Law attorneys from February 2020 to December 2021.

Further, another deficiency noted by other courts, and now this Court, is the reliability and credibility of the declarations and argument provided by DTLA Law.  In the opposition brief, DTLA Law asserts that the *Staats* case was handled after he left Manning but "prior to his employment with DTLA."  (Dkt. No. 6 at 4.)  In support, DTLA Law provides two declarations from the attorney of record and the Human Resources Manager and Director that both identically attest, "Since the beginning of [Werbin's] employment with DTLA, policies and procedures were set forth to create a 'wall' to ensure there is no sharing of confidential information."  (Dkt. No. 6-1, Morrow Decl. ¶ 8; Dkt. No. 6-3, Rezkallah Decl. ¶ 3.)  Werbin also declares that he handled the *Staats* case against Costco shortly after he left Manning.  (*See* Dkt. No. 6-2, Werbin Decl. ¶ 11.)  In argument, DTLA Law claims that the "*Staats* case was brought after he left the defense firm but prior to his employment with DTLA.  In other words, that case was not a case he handled as a DTLA lawyer."  (Dkt. No. 6 at 4.)  While the declarations and argument are consistent in this case,[2] they have not been in prior cases.

For example, Werbin filed a declaration in the *Noris-Barrera* case with the Northern District of California stating, "In early 2020, shortly after my employment at Manning ended I brought a case (the 'Staats Case') against Costco to a successful resolution.  The Staats case was brought when I was newly employed with DTLA.  This is the only COSTCO case I handled while employed by DTLA."  *Noris-Barrera v. Costco Wholesale Corp.,* 23cv5245-SI, Dkt. No. 11-1, Werbin Decl. ¶ 11 (N.D. Cal. Nov. 6, 2023).  The district court in *Noris-Barrera* noted that there was no explanation as to the "glaring contradiction" in the declarations provided by DTLA Law.  *Noris-Barrera,* 2023 WL 9181481, at *4 ("The fact that Werbin litigated a case against Costco after

---

[2] DTLA Law likely corrected the inconsistency noted by other courts.

joining DTLA Law belies representations by DTLA that an ethical screen was in place when Werbin joined the firm."). Moreover, in a state court order dated October 25, 2021, *Cochran v. Costco Wholesale Corporation*, the court granted disqualification of DTLA Law noting that DTLA Law's evidence did not rebut the presumption noting that even though DTLA Law made an effort to keep cases involving Costco away from Werbin, Costco pointed out that Werbin admitted to prosecuting a case against Costco after his employment with DTLA Law began. (Dkt. No 4-4, D's RJN, Ex. A at 6.[3]) DTLA Law does not affirmatively address these inconsistencies and is another reason why it has failed to meet its burden to rebut the presumption of vicarious disqualification.

In sum the Court concludes DTLA Law has failed to rebut the presumption of vicarious disqualification, and GRANTS Defendant's motion to disqualify DTLA Law as Plaintiff's counsel.

## Conclusion

Accordingly, the Court GRANTS Costco's motion to disqualify DTLA Law. DTLA Law Group is disqualified from representing Vankiet Tran in this action. The Court STAYS this action until May 10, 2024. Plaintiff shall either inform the Court that

/ / /

/ / /

/ / /

---

[3] Defendant filed a request for judicial notice of three state court orders granting motions for disqualification. (Dkt. No. 4-3.) Plaintiff did not oppose. The court may take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of state court orders. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (we "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). The Court finds the state court orders are appropriate under Federal Rule of Evidence 201, and GRANTS Defendant's request for judicial notice.

23cv2057-GPC(BLM)

she intends to proceed pro se or if Vankiet Tran retains new counsel, he or she must file a

notice of appearance.  The hearing date set on April 12, 2024 shall be **vacated.**

IT IS SO ORDERED.

Dated:  April 2, 2024

Hon. Gonzalo P. Curiel
United States District Judge

17

23cv2057-GPC(BLM)